Good morning, Your Honors. May it please the Court, my name is Shana Harris. I'm here along with Co-Counsel Jonathan Linford, Andrew Riley, and Ryan Kraft. We're third-year law students from the University of Arizona and part of the Welcome to the Knight Circle. We're glad to have all of you. We're glad to have you too, Counsel. And we're part of the Pro Bono Appellate Project and we're here representing Appellant Cynthia Allocco. Okay. Mr. Linford and I will be covering the special relationship argument. Mr. Riley is going to come in and cover attorney's fees and then Mr. Kraft is going to cover the rebuttal. Okay, so you've got 15 minutes total. How are you hoping to divide this time? In a perfect world, Mr. Linford and I are going to take about nine minutes. Mr. Riley is going to take the next four and then Mr. Kraft is going to take the remaining two. You've got 15 minutes. It counts down. Try to keep track of your time. We'll try to help you keep track of your time. And as you've noticed, I'm a bit of a softy, so sometimes when people go over, I'll give them a minute or so to rebut, even though they've used their time. Don't take my behavior as necessarily the behavior of other judges. Okay. Okay, but anyway. I think the students should all know you're very fortunate in the presiding judge. Extremely understanding. So when you're ready for your argument, you go ahead. Okay. Ms. Allocco became disabled while she was working for American Express, and she subsequently filed for short-term and long-term disability benefits with MetLife, who not only evaluated the short-term disability claim, but also acted as the insurer for the long-term disability benefits. And because of the ñ Now, you say acted as the insurer. I think that's a disputed point. They acted as the administrator, that's for sure, but whether they were an insurer is disputed, I think. For the long-term disability benefits, they funded that. I understand that. Yes. But that's not before us. I'm sorry? That's not before us. No, it's not. We're bringing the claim for the short-term disability. I got you. Okay. Okay. In a sense, it's before us because you argue that the decision that was made in the short-term would have affected the long-term, right? Correct. And the fact that MetLife funded the long-term created a conflict of interest when it came to them evaluating the short-term disability benefits because the standard for meeting or being qualified for the short-term disability benefits was lower than the long-term disability benefits. It was in their best interest to not grant the short-term disability benefits. If the short-term disability had not been granted, would it have been possible to obtain the long-term? It would have been very difficult because the standard for short-term disability benefits was the inability to perform the material and substantial functions of the job, whereas for the long-term disability benefits, the standard was any and every function of the job. So if you can't meet this lower material and substantial, odds are you're not going to be able to also meet the any and every standard for the long-term disability benefits. And because this plan, the short-term disability plan, raised the same concerns as an insurance contract, and Arizona law has recognized that faith damages and special relationship in insurance contracts, this short-term disability plan should, the same, I guess, rules should apply to the short-term disability plan because you have Ms. Sulaco and others like her relying on these short-term disability benefits to, as their sole means of income in the case they become disabled, and it's going to fund them for six months and, you know, put food on the table, keep a roof over their head, a lot can happen in six months. So this is not just an ordinary employee benefits program. It's very important to Ms. Sulaco and others like her because a lot can happen in six months. And because of MetLife's, I guess, high level of discretion in evaluating these claims and in evaluating not only the original claim, but the appeals also, and because of their extensive involvement, there should be some sort of oversight and something, some sort of deterrent to make sure that these claims are handled appropriately. But, Chancellor, you wouldn't say that MetLife has the same legal responsibility and relationship in deciding the salary extension and the insurance coverage. You wouldn't say that that's the same test and relationship. Whether, I'm not sure. In testing the bad faith question of salary extension. It's going to depend on the relationship, the legal relationship between MetLife and the employee. Now, it's not the same, is it, the relationship when it comes to deciding the insurance? Well, Arizona law has recognized, has applied bad faith to third-party administrators, and that's what MetLife was functioning as in relation to the short-term disability plan. They hired the doctors and the claims adjusters, and it was their employees who evaluated Ms. Sulaco's claim. And so functioning as the third-party administrator, they would be, they can be held liable for bad faith under Arizona law. You think it's the same? As an insurance contract. Same relationship. It raises the same concerns, and there's just as much chance for mishandling of claims as in an insurance contract. Okay. I think you've used up the time that you have, so I think we're ready for the next counsel. Thank you. Morning, Your Honors. This is... No, you say, may it please the Court, my name is... May it please the Court, my name is John Linford, and I'm continuing the argument. Thank you. Your Honors, this is basically, this is essentially insurance. It's a self-insured plan. If you look at the statute of insurance in Arizona and the cases that interpret it, there's five factors that describe what an insurance plan is, and MetLife basically concedes that some of these factors apply. This is an insurable interest, there's a risk of loss here, the disability. The American Express has assumed that loss. But with respect to these sort of salary continuation benefits, is MetLife paying any money out of its own funds, or is it merely making a determination as to whether or not American Express would pay it out of its own funds? MetLife is not paying the salary continuation out of its own funds. It was paying the long-term disability. And let me ask you another question, because this is why your position is hard for me. American Express is paying no one else to supply those funds. I mean, American Express is self-funding, as it were, the payments for the salary continuation. Yes, American Express is self-funding the payments. How is that then different from just any benefit that an employer would pay? The distinctions that are made is that here, this is like very similar to a short-term disability plan that an employer would contract out, but it's just a self-insured plan. And so there's a difference between sick pay, vacation pay, where the plan is just decided by a clerical basis. But here, they've hired a third-party administrator to administer this on a case-by-case basis. And it raises all the same concerns as insurance that creates a special relationship. So basically, here you have this risk that's assumed, like insurance. She's paying into that with her services. And here they evaluate the claim on a case-by-case basis. And once she is owed those benefits, she's vested into those benefits. Do we have anything, any kind of precedent that indicates that instead of paying a premium, you're paying it with your services? We're not aware of any case that says specifically premium services equals premium, but we're not aware of any case that doesn't say that. Well, I don't know if that helps you, Ernie. But, I mean, basically, that's what it is. She's the services. It's a self-funded insurance plan. And even if it's not insurance by the technical term, it still raises the same concerns. And in Arizona, you have the Enyart case, which extended the special relationship. That wasn't an insurance policy. That procured an annuity policy. And it said even though this isn't insurance, it raises the same concerns, namely, there's a calamity. Yeah, to me, that's your best argument, that there is a special relationship. Yes. And why is that? How would you detail that? Yeah, there's a special relationship because, as it says in the Noble case and the Enyart case, if it raises these same concerns, it creates a special relationship, namely, if there's a security for a calamity, if there's an expected protection, if there's an unequal bargaining power, if the party's in an especially vulnerable position. And here, that was the case. That's the case we have here. She was insuring herself in case there was a disability that came up, a calamity. She was in an extremely vulnerable position. When she was wrongfully denied her disability benefits, she ended up being terminated from her job, and so now she's out of a job and she has a disability. And she's in this vulnerable position. There's an unequal bargaining power between her and American Express. And because of the FAR case, the third-party administrator can be on the hook, even if they're not the actual insurer. FAR is exactly what we have here in that MetLife is a third-party administrator of the insurer, or there's a special relationship because it raises these same concerns. I thought one of the best points that was made in your brief was that there was a self-interest on the part of MetLife because of their eventually having to assume the long-term if the short-term were taken. Yeah, I mean, that's one of the main concerns in creating the special relationship, is to deter any bad faith that could come up. And in this case, the short-term disability and the long-term are so intertwined that any decision MetLife makes in the short-term lays the ground for a decision for the long-term disability. And they have that interest there, they have that risk, and the way the plan is set up, it's just like a short-term disability insurance plan, and they have an incentive to deny these benefits. And the incentive is to not be on the hook for potentially hundreds of thousands of dollars because the long-term is indefinite. It goes until she retires, and this is a lot of money at stake. Even if the salary continuation is only six months, this long-term is much more time and involves much more money. So this is why not only do we see that there's this special relationship here and that the court should find a special relationship or should remand, as these cases show that this case does have merit. There are meritorious arguments here. And so at a minimum, she should not have been penalized by having attorney's fees awarded against her. Which is a nice transition, I guess, into the next person to argue. Okay, thank you. Thank you. I didn't know I was so short. Your Honors, may it please the Court, my name is Andrew Riley, and I'll be addressing the attorney's fees issue today. When the trial court entered the judgment of attorney's fees, a judgment in excess of $30,000 against Ms. Aloko, an indigent plaintiff, it did so only after incorrectly considering the many factors and circumstances surrounding her particular claim. And while great deference is given to trial courts when determining whether or not to award attorney's fees in claims like this, that discretion is abused when the trial court fails to completely consider an entire factor in its own right and then misapplies other factors. And that abusive discretion is what actually resulted in the unreasonable award of attorney's fees in this particular case. Now, one of the rationales that the district judge gave for awarding attorney's fees against Ms. Aloko, despite her really impoverished situation, was that frivolous suits ought to be deterred. Was this a frivolous lawsuit? I think it's a far cry from a frivolous lawsuit. While certainly, ultimately, you might not rule in our favor, there's a significant difference between a frivolous lawsuit being one with absolutely no merit and the claim that Ms. Aloko has brought here. And it gets cut a little more finely than I just asked the question. The attorney's fees are for activity only at the very end. Was the activity at the very end as to which the attorney's fees were assessed, was that frivolous? As we've argued today, there is a culpable claim. There was a claim that Ms. Aloko brought in good faith. There is case law to support a finding of a joint venture between MetLife and American Express. There's case law to support a potential finding of a special relationship between MetLife and Ms. Aloko. And so with that in mind, it is not a frivolous case. The Arizona cases that have discussed the frivolous nature of certain cases are, one such example would be the Arthur case, which discussed whether or not the 16th Amendment was valid or whether or not wages were earned income for the purposes of taxation. Those have been clearly adjudicated in many different courts, and there's no wiggle room in regards to those. So to continue to bring a case like that would be a frivolous claim. Here, this is a far cry from a frivolous claim. It's a novel claim. It's a claim that is grounded, it's colorable, it's brought in good faith, and it has an opportunity of success. And so with that in mind, the novelty of it should weigh significantly against awarding attorney's fees. In order to prevent a chilling effect, there should be no desire to close the courthouse doors to claims of this sort, the claims that are brought in good faith, the claims that have merit and need to be adjudicated fully and completely. And that is the factor that is most adverse to MetLife's position. And coincidentally and curiously, that's the one that was completely and utterly ignored by the trial court in this situation. Do you argue today that the district judge misunderstood the legal criteria for awarding attorney's fees or that the district judge just made an error of judgment? It's more than an error of judgment. The district judge completely ignored a particular factor that he's to consider, that the Arizona Supreme Court has told him to consider, and he misapplied other factors taken as a whole. And which one is it that you contend he ignored? He ignored the chilling effect. He ignored the sixth factor on whether or not a chilling effect would result from the $30,000, the judgment of attorney's fees against the indigent plaintiff. That's the one he ignored completely, and then he misapplied others, and taken as a whole that amounts to an abuse of discretion and should be reversed in this case. Okay. You have used all but three seconds of the time, but we will make sure that there's time for rebuttal. I just did that to scare you a little bit. Good morning, Your Honors. I'm Steve Bressler for the EEOPLE. This case arises out of American Express's payroll practice of continuing salary while an employee misses work. Ms. Alaco, the appellant, had a contractual relationship with American Express, not with MetLife. It was an employment relationship, and MetLife was a claim administrator for the salary continuation plan, and it did not have the final say on whether or not benefits would be extended. And if the appellant was not satisfied with any decision made regarding her continuation of her salary, she had contract remedies for breach of both Express and implied remedies. But she cannot create a tort of bad faith out of either breach. While the duty of good faith and fair dealing is implied in all contracts, the breach of that duty sounds in contract. And the Arizona courts have not allowed a tort for the breach of that duty, except in limited situations. But there was no contract between her and your client, is that right? That's correct. So why is this a contract suit, and why, then, can you rely on the fact you don't get punitives in the contract, absent a special relationship? Okay. Well, I think the premise is that the suit really is against American Express. That's the contract. Well, except American Express wasn't named as a defendant. Correct. Right. And their argument is you can sue the administrator under the Sparks and Farr case because they're in a joint venture-like relationship. Right. And we understand that. Is that a frivolous argument? No, it's not a frivolous argument, but your remedies, your underlying claim and your remedies, are what would be available if you had sued American Express directly. And by the way, you know, it doesn't make any sense to me, and I'm not now describing behavior that your client engaged in. So this is hypothetical. Please understand that this is not an accusation against your client. It doesn't make any sense to me to read Arizona law to protect an administrator like your client from bad faith denial of benefits when there is a long-term interest down the road that if benefits are allowed now, there's money coming out of your client's pocket. Assuming it's bad faith, I mean, I understand it's fibromyalgia. Fibromyalgia is the battleground of all disability cases and so on. But it seems to me that at least it is conceivable that there should be a tortious cause of action against an administrator that is self-interested at the far end if it were to recommend the grant of benefits here. Judge, let me answer that in two parts. First is the same could be said if American Express were directly administering this claim. You know, what check is on there for American Express to, in gross and these are not the facts of the case, but just hypothetically just gross bad acts, intentional, willful, spiteful, however bad you want it to be, they're going to deny her salary continuation because they actually have a more direct interest in denying benefits than MetLife would. As to the long-term benefits, is MetLife an insurer? Yes, they are. And bad faith breach of an insurance contract, that gets punitive. Yes, but the long- So what about bad faith breach of an obligation that might lead to a bad faith breach of the insurance contract? Well, in this case it would not, Your Honor. The long-term benefits were governed by ERISA. ERISA provided Ms. Alaco her exclusive remedy. And if I may return to answering your question, if we look at it first, suppose American Express were administering the claim and they engaged in bad behavior, her remedies against American Express and against MetLife need to be the same. And under Arizona law, if an employer denies salary continuation benefits or does some other breach, whether it be vacation pay or sick leave, the remedies are employment-related remedies. They are not for the tort of bad faith. And the Arizona courts have been consistent, starting with Wagenseller, then with Wirth, and then with Nelson, all cited in our briefs. They have not extended the tort of bad faith to a breach of any term of the employment-contractor relationship. You know, I have to say that I am very disturbed with this case, with the effect of our justice system, the way it's worked out. Here we've got a person who had some serious problems. MetLife made a decision that there was no basis for any kind of reimbursement for the short term. That decision would be hard to uphold from the standpoint of being in good faith when it completely ignored that treating physicians relied entirely upon consulting physicians who never saw the patient, never talked to the patient over the phone, never did anything that would justify relying on those people in contrast to the treating physician. In any other context, Social Security or an insurance context, that would never have been upheld. And yet, we've got a situation where that resolution of it resulted in a denial, initial denial, until apparently American Express felt guilty about it and actually granted the short term. But it's a series of problems, I suppose, having something to do with the way that the attorney represented it and so forth. But I don't feel very good about our justice system with this kind of a thing when apparently she would have been entitled not only to the short term but would have been entitled to the long term from any standpoint of whether she really was suffering and unable to work. So instead of having any long term, she's on Social Security getting $1,000 a month. And then you want $35,000 out of her. Yeah. Well, I appreciate your sentiments, Judge. The issue before the court right now is whether or not she can sue for bad faith. But let me comment on that just very briefly. Why isn't there a special relationship? I guess that's the question. Well, for a special relationship to exist, you first have to have a contract. And the contract is between American Express and- Well, why do you have to have a contract? Arizona law says that. The Arizona Supreme Court in the Sparks case, which is cited in our briefs- Well, I thought that there are other cases that you could have a special relationship other than contract. I'm not aware of any, Your Honor. Let's take Sparks for a moment and let me read you something from the court. It says, That's the Sparks case. They've cited the Enyart case. But the Enyart case actually had a contract, too. There was a settlement contract between the plaintiff, Enyart, and Transamerica. Transamerica was a party to the contract. And as the court said, this isn't a true insurance contract. It's an obligation to procure insurance. And the court felt that that obligation was so similar to insurance that it created a special relationship. But there was a contract. So what is the contract here? It's the employment contract. And the Arizona courts and the courts of all the other states that have considered this, I'm not aware of cases going the other way, but certainly the vast majority of the courts have said there isn't the same special relationship in the employment context such that it would give rise to a tort of bad faith. I'm talking about a special relationship with MetLife, who is doing this advising and has a self-interest in denying it. It seems to me that that is independent of a contract, that they had a special relationship because of the situation they found themselves in, that by denying short-term, they were, in effect, able to preclude long-term. Well, first, Judge, you still have to have the contract. But let me address your point because I actually wanted to make this point in answer to Judge Fletcher's question. The short-term and the long-term were separate. She did not have to be successful in her short-term, or her salary continuation is the more accurate term. She did not have to be successful in getting salary continuation benefits to make a long-term disability claim. In fact, different units at MetLife handled it. There was a group dedicated to handling salary continuation claims. They made recommendations, and American Express had the final say. And this actually went through three levels of appeal. Yeah, that's an odd thing. Yeah, American Express did have the final say, but now they've come back, feel bad about the decision they made, and granted it. Well, all we know is they did it for a business decision, and they paid it. But when it came to American Express ñ What do you mean a business decision? That's what we were told. We don't have any other further evidence in the record. Well, why would it be a business decision? I don't know, Your Honor. I think it would be a business decision because they felt that they had wronged this person. There's no evidence to support that. They could have made the ñ There's plenty of evidence to support that because she's clearly disabled under the rules of the Social Security Administration. If you've ever dealt with Social Security disability cases, you know how tough it is to get. There's lots of evidence that they made a mistake and have stated charitably. Okay. Well, what I was going to say is American Express made their own evaluation. They actually went out and hired their own physician, and I think it was Dr. Givens, and then they were the ones that made the final say to deny her benefits. The long-term disability benefits were something completely different. And what happened there was she didn't appeal that. Now, you could say I don't like how this all played out, but the fact of the matter is that this never made it through the MetLife appellate process. And that's why she never received her long-term disability benefits. She was denied. And when she filed suit, she didn't even sue under ERISA. The case was removed because it was ERISA and was dismissed because she had not exhausted her remedies. So I don't know that the system failed her so much as she may not have pursued her benefits or her rights under the system. Well, that's part of the system, isn't it, where the attorneys screw up and leave someone in this situation? I don't know, Your Honor, if it was an attorney screw-up or not. I wasn't involved in the case. But how would it not be to not appeal? Well, I assume you're asking me about the attorney that was representing her at the time that her claim was being administered. Is that correct? Well, yes. Okay. I guess I would rather not comment on whether or not the attorney screwed up or not. All we know is that the remedies were not exhausted, and her case was dismissed because of that. Let me ask you about attorney's fees. Okay. How can MetLife, after all of this history, with a woman living in her garage, who has received Social Security benefits based on the very disability that MetLife has denied, seek attorney's fees in any amount against this woman? What that strikes me as, I mean, this is the insurance company that has a little Snoopy dog. Is that right? Oh, yes, Snoopy, yes. You know, Snoopy dog does not do things like that. Well, Your Honor, first of all, it had the right to apply for attorney's fees under Arizona law, and it was simply exercising those rights. At the same time, it tried to seek a resolution with Ms. Alaco to end the litigation and have everybody go home. And I think that her counsel wanted that resolution, but she did not. Funny thing. Had you been in her position, would you have said, you know, all is forgiven, I've got my $9,000 after you guys have totally, I won't even say a word because it's going to be a bad word that I think might be in her head. You'd just say, oh, I'm going to go home now? That's what you expect her to do? Well, what we expected her to do was to acknowledge and respect the court's ruling, and that was something that she did not do, and I think that that may have been one of the reasons the judge exercised his discretion the way he did, because that's the issue before the court now is, did the judge have authority to award a fees? And he did. And it was an exercise of discretion, and did he abuse that discretion? And I don't think that he did. You have got some disagreement from me. I don't have any other comments unless the panel has questions for me. Well, I have this question. You have someone who has fibromyalgia and mental problems that can't work and so forth. If there had been without the technical missteps that were made, ERISA or whatever, would there be any reason at all why you wouldn't be paying this long-term disability? Well, two things, Judge. What we're talking about here on appeal are not the contract benefits, but whether she has the right to sue for bad faith, and I'd like to comment on that in a moment. But I am not really prepared to the only thing that's before the court is Judge Silver's summary of the evidence, and Judge Silver, who did not hear from all of the people. As I understand it, a lot of the, not a lot, there weren't many people involved, but the primary claim handler and the physician who were involved for MetLife were not able to testify. So I can appreciate that reading Judge Silver's decision, you might believe that this was a really bad result. But I don't know that that was all the evidence, and I think it's fair to say that there is some strong substantive evidence going the other way. The substantive evidence would be those persons who never examined her. That's true. They did not. They looked at the file. That's true. Didn't talk to her over the phone. I don't know that. No, I didn't. Do you know the treating physician rule in Social Security cases? I'm somewhat familiar with it, but I don't do Social Security work. Well, if you knew Social Security law, you would see that this is a slam dunk under Social Security law, because treating physician is given priority or preference. People who never see her are not given preference. You can, under certain circumstances, reject treating physician recommendation or evaluation, but it's tough to do. And I also know that under ERISA, I believe it's the Nord case, that the Social Security treating physician rule doesn't apply in the ERISA context. I appreciate what the judge is saying that if looking at the substantive case, that you think it weighs in favor of benefits, but, again, that's not where we're here on. Well, we are here under attorney's fees, and I must say I find this overreaching on the part of whether you're entitled to it under law is a slightly different question, but under this circumstance I should have thought that MedLife would at least have had the decency to say, you know what, we've abused this woman long enough. Okay. Well, I acknowledge the judge's comments. We're here on benefits, and I'm sorry, we're here on whether she can sue for bad faith, and if I may just summarize the underlying relationship. No, we've got the point. Okay. Thank you. I don't have anything else, Your Honor. Thank you. Would you like three minutes for rebuttal? That would be great, Your Honor. Your Honor, my name is Ryan Corey. Your Honors, my name is Ryan Kreft. Have you been enjoying the past argument? Yes, I have. It should be noted that this system, just how it is, should create a system that should create a special relationship between Ms. Alco and MedLife, just for public policy reasons. But it's also important to note that there was a contract that forms the core of this case. The salary continuation benefits were a contract between Ms. Alco and American Express, and American Express and MedLife were joint ventures in implementing it. However, this isn't just a run-of-the-mill mere employment contract as contemplated by other Arizona cases. This hasn't been addressed by any case of this precise system in Arizona. Wagon Seller is completely off point because that addresses the at-will employment context. This isn't at-will at all. This is an actual benefit plan, and Wagon Seller actually noted in that decision that benefit plans, they weren't discussing that. Bad faith could apply in that situation. They just didn't address it. So no Arizona case has specifically addressed this system, and this system needs bad faith damages to apply to it because it's not just a normal contract. Normal contractual remedies won't be sufficient to protect employees. Here we have American Express who, yes, they self-funded this, but then they outsourced the decision to a party who was conflicted. Any goodwill that American Express might have in wanting to ensure that their employees, you know, get the benefits that they deserve is gone. They gave it to MedLife to make that decision, and they knew that MedLife had a conflict because they insured the long-term disability plan. This takes it out of the scope of a normal sick leave or vacation pay benefit where the employer implements it themselves, and it's merely clerical in nature. I mean, this is a completely different beast where you have discretion and incentive to deny claims, and that's the exact situation where bad faith needs to apply. We need to protect employees who depend on their benefits, who work, in this case, Ms. Alko was told to work for six months, and then she would be able to depend on being covered for six months if she became disabled. And she did depend on that, and other employees would depend on it as well. Anybody would depend on these things. And their interests need to be protected from bad faith denials. Even American Express, if this was just between American Express and Ms. Alko, bad faith should apply to prevent them from denying benefits and bad faith. But the court need not decide that precise issue, because here we just have a different system entirely, and we need to deter that system from ever being created. American Express and MedLife shouldn't be even discussing coming up with a system like this. And additionally, we need to prevent MedLife and other third-party administrators who are deciding these claims from acting in bad faith. Okay. Thank you very much. Before everyone finishes, I'd like to thank the students for arguing. They were all very good. And I have to say, despite my disagreements that I've indicated, you're also a very capable lawyer, so I don't want to compliment only one side. Thank you very much. The case of Alko v. Metropolitan Life is now submitted for decision. Thank you.
judges: Hug, Reavley, Fletcher W.